UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YUNIOR RADHAMES VITTINI ARIAS,<br>Petitioner,<br><br>v.<br><br>DAVID WESLING, *Acting Field Office Director, U.S. Immigration and Customs Enforcement, Boston Field Office, Immigration and Customs Enforcement*; DAVID J. VENTURELLA, *Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; TODD BLANCHE, *Acting U.S. Attorney General*; and MICHAEL NESSINGER, *Warden of Wyatt Detention Facility*,<br>Respondents. | No. 26-cv-660-JJM-AEM |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Yunior Radhames Vittini Arias' Petition for Writ of Habeas Corpus challenging his detention. ECF No. 1. He argues that continued detention based on an alleged violation of his Order of Supervision ("OSUP") release conditions is illegal such that it violates the Immigration and Nationality Act ("INA"), its implementing regulations, and the Due Process Clause of the Fifth Amendment. *Id.* Moreover, Respondent's purported third-country removal of Mr. Vittini Arias is not significantly likely to occur in the reasonably foreseeable future such that continued

detention is arbitrary or punitive and therefore an unconstitutional violation of his liberty interest *Id.* In response, Respondents ("Government") argue that his detention is legal under 8 U.S.C. § 1231(a)(6). ECF No. 5.

For the reasons set forth, the Court GRANTS Mr. Vittini Arias' Petition and ORDERS his immediate release consistent with his OSUP conditions.

## I. BACKGROUND

Mr. Vittini Arias is a citizen of the Dominican Republic who is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island ("Wyatt"). *See* ECF No. 1. He is subject to a final order of removal[1] but has been granted protection from removal to the Dominican Republic under the Convention Against Torture ("CAT"). *Id.*

Before his current detention, Mr. Vittini Arias was living in the United States under an OSUP issued by ICE after a finding that his removal could not take place. *Id.* at 2.[2] ICE revoked that order and re-detained him on or about September 4, 2026, after the alleged violation of his OSUP release conditions. ECF No. 5 at *2*. On

[1] An order is "administratively final" when the Board of Immigration Appeals ("BIA") has ruled on an Immigration Judge's ("IJ") removal determination unless the Petitioner appeals to a Court of Appeals and the court stays the removal order, in which case the Petitioner's detention is reviewed through the lens of 8 U.S.C. §§ 1225(a) or 1226. 8 U.S.C. 1231(a)(1)(B)(ii); *See Higiro v. Nessinger*, No. 26-cv-450-JJM-PAS, slip op. at 5 (D.R.I. Sept. 8, 2026) (removal order become "administratively final" when BIA dismissed petitioner's appeal without First Circuit review).

[2] Mr. Vittini Arias was detained from August 2025 through April 2026 but was released on OSUP by the U.S. District Court for the District of Massachusetts, after ICE failed to remove him to Mexico. *See Radhames v. Moniz*, 1:26-cv-11289-ADB, Doc. No. 4 (D. Mass. March 16, 2026).

September 17, 2026, ICE informed Mr. Vittini Arias that it intended to remove him to Rwanda[3] on or about September 24, 2026. *Id.* ICE then notified the District of Massachusetts of its OSUP revocation and intent to remove Mr. Vittini Arias. *Id.* at 3. Based on that information, the District of Massachusetts dismissed Mr. Vittini Arias' habeas petition[4] and dissolved the stay order preventing his transfer or removal. *Id.*

On that same day, Mr. Arias Vittini filed this habeas petition[5] which the Government alleges is re-attempt to obtain relief that had previously been denied, creating an abuse of the writ of habeas corpus.

## II. LEGAL STANDARDS

28 U.S.C. § 2241 provides that federal courts may grant habeas relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

Mr. Vittini Arias's order of removal is considered administratively final in that the BIA has affirmed the IJ's determination contemplating his removal. ECF No. 5

[3] Rwanda is about 7000 miles from Mr. Vittini Arias' place of birth. He has no connection to Rwanda or even to the continent of Africa.

[4] On September 18, 2026, the District Court for the District of Massachusetts dissolved the order to stay Mr. Vittini Arias' removal and dismissed the action.

[5] The petition falls within the Courts jurisdiction because he is now detained in the District of Rhode Island at the Wyatt.

at Ex. 1. This action falls within the context of 8 U.S.C. § 1231. The post-removal order statute provides that the Government "shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day period is called the "removal period." *Johnson v. Arteaga-Martinez*, 596 U.S. at 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Noncitizens are subject to mandatory detention during this 90-day removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Section 1231(a)(6) authorizes the detention of certain noncitizens beyond the ninety-day removal period, but that authority is subject to an implicit temporal limitation: detention may continue only for the period reasonably necessary to carry out removal. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001); *but see G.P. v. Garland*, 103 F.4th 896, 901–02 (1st Cir. 2024) (*Zadvydas* is inapplicable where detention remains tied to ongoing, unresolved administrative proceedings). After six months of post-removal-order detention, once the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must rebut that showing with evidence. *Zadvydas*, 533 U.S. at 701. It does not, however, "authorize indefinite detention" where removal is not reasonably foreseeable. *Id.* at 699–701.

## III. DISCUSSION

### 1. The Petition is Properly Situated Before the Court

The Court has jurisdiction under 28 U.S.C. § 2241 to review a noncitizen's present detention notwithstanding a prior habeas proceeding where the subsequent

petition challenges a new period of detention or materially changed circumstances. Although the First Circuit has recognized that "second or successive" is a term of art under habeas applications subject to 28 U.S.C. § 2244(b) those restrictions govern applications under 28 U.S.C. § 2254 but do not resolve whether subsequent § 2241 petitions challenging a materially different period of immigration detention is permissible. *See Anderson v. Divris*, 138 F.4th 625, 630-32 (1st Cir. 2025). The Government's use of *Anderson* is misplaced because *Anderson* addressed whether a subsequent § 2254 petition constituted a "second or successive" application subject to the restrictions of 28 U.S.C. § 2244(b), and the First Circuit emphasized that the successive-petition inquiry is distinct from the former abuse-of-the-writ inquiry. *Id.* at 632.

Here, Mr. Vittini Arias challenges a *new* detention arising from circumstances that postdate the prior habeas proceeding including an alleged violation of release conditions and the Government's newly asserted plan to effectuate his removal. Mr. Vittini Arias is not simply attempting to relitigate his prior habeas petition. To be clear, the prior proceeding concerned the earlier detention posture; this petition challenges materially changed circumstances from the September 2026 re-detention, the alleged OSUP violation, and the Government's newly asserted plan to remove Mr. Vittini Arias to Rwanda, not Mexico. In any event, the prior habeas proceeding does not foreclose review of the present detention because restrictions applicable to federal habeas proceedings under 28 U.S.C. § 2244(b) involve a substantially different procedural and substantive context than those in § 2241.

**2. ICE's Re-Detention Under INA's Implementing Regulations § 241.13.**

An agency is bound by its own regulations, and detention imposed in violation of them is unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954); *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (where an immigration regulation protects a fundamental right and ICE fails to adhere to it, the challenged detention is invalid); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 647-52 (D. Mass. 2018) (ICE's failure to follow 8 C.F.R. § 241.4 rendered post-order detention unlawful). This Court has repeatedly held that ICE's re-detention of long released noncitizens without compliance with these regulations violates both the regulations and the Due Process Clause and has ordered immediate release. *Deng v. Nessinger*, No. 26-cv-113-JJM-AEM, slip op. at 7-10 (D.R.I. Mar. 9, 2026); *Bulle v. Wesling*, No. 26-cv-019-JJM-AEM, 2026 WL 183840, at *6-9 (D.R.I. Jan. 23, 2026); *Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *6-9 (D.R.I. Jan. 2, 2026); *see also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149-53 (D. Mass. 2025); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025).[6]

The regulation "was promulgated to protect a fundamental right derived from the Constitution," namely the liberty protected by the Due Process Clause. *Rombot*, 296 F. Supp. 3d at 388 (D. Mass. 2017); *Nguyen v. Lyons*, No. 25-cv-631-MSM-PAS,

[6] The six-month presumption of reasonableness does not reset each time ICE elects to detain, such a rule would produce the indefinite detention that the holding in *Zadvydas* forbids. *Deng*, slip op. at 5 n.3; *Hall*, 2026 WL 18583, at *6; *Bulle*, 2026 WL 183840, at *4.

2026 WL 125093, at *4 (D.R.I. Jan. 16, 2026). Several courts, including this one, have treated the Department of Homeland Security's (DHS) failure to comply with § 241.13 as having substantive consequences, not as a harmless procedural defect: In *Rombot*, the court emphasized that although ICE had represented that the petitioner would be "promptly . . . afforded an informal interview" at which he could respond to the reasons for revocation, there was no evidence that the interview ever occurred. 296 F. Supp. 3d at 386–87. Likewise, in *Nguyen*, the court held that ICE violated § 241.13(i)(2) by failing to make the required individualized determination that changed circumstances existed and that there was a "significant likelihood" of removal in the reasonably foreseeable future, and ordered the petitioner released from detention. *Nguyen*, 2026 WL 125093, at *4. Thus, where DHS has failed to satisfy the regulation's substantive or procedural prerequisites for re-detention, the Government cannot rely upon the underlying removal order alone to sustain custody; habeas relief, including release subject to the preexisting OSUP, is an appropriate remedy. *See id.*; *Nguyen v. Albarran*, No. 25-cv-1926-CSK, 2026 WL 184513, at *7 (E.D. Cal. Jan. 23, 2026) (finding that ICE's failure to comply with § 241.13 violated the petitioner's due process rights and granting habeas relief).

The regulation expressly contemplates two grounds for confinement: (1) violation of release conditions under 8 C.F.R. § 241.13(i)(1) to return to custody and (2) changed circumstances making removal significantly likely in the foreseeable future under § 241.13(1)(2) to revoke release. 8 C.F.R. § 241.13(i)(2). Accordingly, Respondent's argue that (1) Mr. Vittini Arias' arrest for assault and battery, violation

of a protective order, and leaving the scene of property damage is a violation of the conditions of his release; and (2) the assurances made by the country of Rwanda outlined in the 'Declaration' can effectuate Mr. Vittini Arias' removal such that they are significantly likely to produce his removal in the foreseeable future.[7]

### A. Section 241.13(i)(1)

Upon re-detention, the Government is allowed to continue detention for up to six months to effectuate the removal.[8] 8 C.F.R. § 241.13(i)(1). However, a petitioner must be notified of the reasons for revocation, including an informal interview promptly after return to custody and the person must have an opportunity to respond to the reasons for revocation. *See Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (finding inadequate notice where ICE failed to provide a meaningful explanation of the basis for revocation under § 241.13(l)); *Nguyen v. Lyons*, 2026 WL 125093, at *4 (finding notice inadequate where ICE merely "parrot[ed] the language of the regulation" without explaining why the petitioner's particular release was revoked).

---

[7] Paragraph 7 of the 'Declaration', written by Vu Cam, Acting Unit Chief from the Removal Management Division still relies on the instructions in the "Guidance Regarding Third Country Removals" published by DHS on March 30, 2025. ECF No. 5-4 at ¶ 7. The 1st Circuit has struck down the Guidance, setting it aside under the Administrative Procedure Act. *See D.V.D. v. U.S. Dep't of Homeland Security*, No. 26-1212, 2026 WL 2797801 (1st Cir. 2026) (affirming lower courts entry of declaratory judgment in part and vacatur of policy).

[8] *Zadvydas* describes § 1231(a)(6) as authorizing detention beyond the removal period while recognizing that it cannot authorize indefinite detention. *Zadvydas*, 533 U.S. 678, 689–90 (2001).

On September 4, 2026, the interviewing ICE officer triaged Mr. Vittini Arias' detention under § 241.13(i) for violation of his OSUP conditions and changed circumstances calling for significant likelihood of removal. Even if Mr. Vittini Arias' August 31, 2026, arrest formed a violation of his OSUP conditions, § 241.13 does not eliminate the procedural requirements § 241.13(i)(3). If ICE reasonably believed that Mr. Vittini Arias violated the condition, he should still be given an opportunity to contest the factual basis for the revocation by evaluating "any contested facts relevant to the revocation" and determine whether the acts warrant revocation and further denial of release. *Id.* The ICE form provided by the Government shows that Mr. Vittini Arias was presumably read, without more, the conclusory statement in the form and that he would receive an informal interview. ECF No. 5 Ex. 2 at 1—3.[9] Moreover, the ICE officer said that Mr. Vittini Arias declined to contest his release after given an opportunity. *Id.* There is no way of telling why, if at all, Mr. Vittini Arias refused to make an oral response or provide a written statement in the informal interview outside of the form provided by counsel. The presumption of good faith lies with the Respondents in that regard.

To that end, the Court sides with the Government's view that Mr. Vittini Arias' alleged conduct violated his OSUP conditions, rendering his detention under § 241.13(i)(1) proper. Still, the Court is convinced that whether continued detention violates his liberty interests is where the rubber meets the road. As such, the merits

[9] The ICE form shows that conditional release was violated on grounds that he was "arraigned in the Dorchester, MA District Court" for the offenses.

of prolonged detention under § 241.13(i)(1) will be addressed in conjunction with the merits of § 241.13(i)(2).

**Section 241.13(i)(2)**

8 C.F.R. § 241.13 provides that ICE may revoke a noncitizen's supervised release if "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The First Circuit has provided ICE with four key elements that it must meet to re-detain a noncitizen under this regulation: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). A court cannot make the individualized finding in the first instance; it must review the finding "in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620 (citing 8 C.F.R. §§ 241.13(f)(i)(2)). The burden is on the Government to show that the noncitizens' removal is significantly likely to occur in the reasonably foreseeable future. *See Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026) (collecting cases).

The Government contends that letters of assurances and declaration of statements made by high level officers affirming Mr. Vittini Arias' removal to Rwanda on or about September 24, 2026, are the changed circumstances rendering his removal significantly likely in the foreseeable future. The Court is unpersuaded by this contention. Here, little from the record suggests that Mr. Vittini Arias'

removal attempt will be any different from that tried five months ago to Mexico. The record does not even suggest a formal agreement and acceptance by the country of Rwanda[10]. To the contrary, the Government's own submission states that ICE will continue to "make efforts to effectuate" his removal, suggesting much is left to do before removal can materialize. Moreover, reliance on diplomatic assurances does not pass muster because although assurances may bear on the feasibility of removal, they do not establish, on its own, that removal is significantly likely. Taken together, the record does not identify a completed travel arrangement, confirmed acceptance of Mr. Vittini Arias by Rwanda, or other concrete evidence showing that his removal is imminent or otherwise significantly likely to occur. Accordingly, the Government has not established the regulatory predicate for continued detention under § 241.13(i)(2).

Importantly, that conclusion is distinct from, and does not implicate, the separate question of whether the Government may lawfully effectuate the proposed removal to Rwanda without first providing the procedural protections applicable to third-country removals.

**B. Third-Country Removals**

Even where the Government could somehow show that removal is likely to occur, it has provided no record showing that Mr. Vittini Arias' fear-of-torture grievances have been addressed, let alone considered.

---

[10] A good starting point might begin with record of a Memorandum of Understanding.

The First Circuit recently held that DHS must provide effective notice and a meaningful opportunity to contest a third-country removal based on fear-based claims.[11] *See D.V.D.*, No. 26-1212 2026 WL 2797801 (1st Cir. 2026).[12] Furthermore, DHS must provide "meaningful" effective notice before deporting someone to a third country. *See D.V.D.*, No. 26-1212, slip op. at 45–48 (1st Cir. 2026) (holding that (1) the FARRA/CAT and implementing regulations require noncitizens to receive effective notice and a meaningful opportunity to present a fear-of-torture claim before removal to a third-country, and (2) the Guidance was unlawful insofar as it authorized such removals without those protections). Nor can DHS's reliance on blanket "assurances" without giving detainees a chance to contest be a substitute for the CAT regulatory framework as part of a petitioner's need for an effective and meaningful opportunity to present fear-of-torture claims before third-country removal proceedings. *Id.* at 36–37 (explaining that the Guidance provided no notice when the receiving country had supplied blanket diplomatic assurances and stating that the statutory and regulatory framework does not contemplate substituting

---

[11] The court vacated only the two declarations concerning the government's obligation to follow the 'sequencing' requirement before third-country removal because the plaintiffs lacked Article III standing for that claim. The remainder of the judgment was affirmed.

[12] The Government should not treat the March 16 stay as an independent continuing authorization after the appeal has been decided because the stay was expressly "pending appeal." (except for the two sequencing declarations it vacated, the Court "otherwise affirm the judgment"). See ECF No. 5 at 4. Under the Federal Rules of Appeals. P. 40 the United States can either seek rehearing or rehearing en banc in a civil case. Otherwise, the mandate ordinarily follows. 41. Fed. R. App. P. 40(a), 41(b).

blanket diplomatic assurances for the individualized procedures governing fear-based claims)

Accordingly, where DHS relies, in part, upon a proposed third-country to carry out its removal to establish changed circumstances, it must provide evidence demonstrating more than the mere possibility of removal: the record must establish that removal to the identified country is significantly likely to occur in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2); (f). And where DHS proposes to effectuate that third-country removal, *D.V.D.* independently requires effective notice of the particular country and a meaningful opportunity for the noncitizen to raise a country-specific fear-of-torture claim before removal. *See generally D.V.D.*, No. 26-1212, slip op. at 45–48 (1st Cir. Sept. 18, 2026). Moreover, "an individual's right to contest removal to a country based on a fear of persecution in that country means little if one does not receive prior notice of the intended removal destination and a meaningful opportunity to contest that destination." *Id.* at 39.

The Government could have identified whether the country of Rwandan formally agreed to accept Mr. Vittini Arias. No formal agreement, however, has been produced to show the countries are designated third-country parties to which Mr. Vittini Arias will be deported outside the letter by the Deputy Secretary. ECF No. 5 at Ex. 4. Likewise, the only form of "travel documents" is the 'Declaration'[13] suggesting that there is a diplomatic agreement. Even though the document names

[13] Even though mention of a manifest is made, no evidence of such record has been provided to the Court.

Mr. Vittini Arias and Rwanda have given the Department of State diplomatic assurances it will not subject him to persecution and torture, it noticeably mentions ICE will continue to "make efforts to effectuate" his removal. *Id.* Outside of that, the Government has attached a letter written by the Deputy Secretary of State, Christopher Landau, to the Acting ICE Director, Todd Lyons, assuring the relationship between the two countries by referring to an undisclosed Memorandum of Understanding. *Id.* at 5-6. In the meantime, it is unclear whether a flight, a manifest or any form of travel documents exist for the would-be removed detainee. What is even less clear is whether Mr. Vittini Arias was given proper notice or a meaningful opportunity to contest his removal to Rwanda, much less whether this removal proceeding would honor his opportunity to present a fear-of-torture claim.

## IV. CONCLUSION

Whatever the statutory basis for ICE's custody of Mr. Vittini Arias may be, the Due Process Clause requires procedures adequate to the liberty interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Moreover, the Due Process Clause also protects against constitutionally excessive civil immigration detention, and the First Circuit has recognized that the constitutional analysis governing prolonged detention turns on the circumstances of the detention rather than on a categorical six-month rule. *See Reid v. Donelan*, 17 F.4th 1, 7-9 (1st Cir. 2021). Mr. Vittini Arias' liberty interest has been violated once for more than a year and re-detention for an indefinite length of time.

The Government may contend that Mr. Vittini Arias' August 31 arrest formed a violation of his OSUP and therefore independently justified his "return to custody" under § 241.13(i)(1). But that contention does not resolve the legality of his continued detention where notice, reasons for revocation, and a prompt interview were not meaningfully or adequately provided. Equally important, assuming that § 241.13(i)(2) prompted the basis for his detention, not much of the record sufficiently supports further detention. Continued detention because removal to Rwanda appears to be foreseeable is dubious at best. After being detained for over a year for a purported removal to Mexico on almost identical grounds, Mr. Vittini Arias has little assurances that his removal proceeding will be resolved on a second occasion in the immediate future. Without evidence supporting a serious agreement between the United States and the government of Rwanda indicating assurances consistent with the 1st Circuit opinion in *D.V.D.*, the Court is not prepared to continue prolonging the violation of Mr. Vittini Arias' liberty interest.

The Court therefore agrees with Mr. Vittini Arias that his continued detention is unlawful. Thus, the Court ORDERS the immediate release of YUNIOR RADHAMES VITTINI on OSUP as requested by the Government.

IT IS SO ORDERED.

***/s/ John J. McConnell, Jr.***

_______________________________

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

September 29, 2026